GREEN J.
delivered the opinion of the court.
The plaintiif in error was indicted in the circuit court of Smith county, for the murder of J. H. Davis, and upon his trial was found guilty of murder in the first degree.
Upon the trial, there was evidence that the prisoner was intoxicated at the time he committed the homicide. Upon the subject of the defendant’s intoxication, the judge told the jury, that “voluntary intoxication is no excuse for the commission of crime; on the contrary, it is considered by our law as rather an aggravation ; yet, if the defendant was so deeply intoxicated by spirituous liquors at the time of the killing, as to be incapable of forming in his mind, a design, deliberately and premeditatedly to do the act — the killing, *155 under such a state of intoxication, would only be murder in the second degree.”
It is insisted that his Honor did not state the principle upon this subject, as it has been ruled by this court.
In the case of Swan vs. The State, 4 Hump. R. 136, Judge Reese, who delivered the opinion of the court, says: “But although drunkenness in point of law constitutes no excuse or justification for crime, still, when the nature and essence of a crime is made to depend by law, upon the peculiar state and condition of the criminal’s mind at the time, and with reference to the act done, drunkenness, as a matter of fact, affecting such state and condition of the mind, is a proper subject for consideration and inquiry by the jury. The question in such case is, what is the mental status? Is it one of self-possession, favorable to fixed purpose, by deliberation and premeditation, or did the act spring from existing passion, excited by inadequate provocation, acting it may be, on a peculiar temperament, or upon one already excited by ardent spirits? In such case it matters not that the provocation was inadequate, or the spirits voluntarily drank; the question is, did the act proceed from sudden passion, or from deliberation or premeditation? What was the mental status at the time of the act, and with reference to the act? To regard the fact of intoxication as meriting consideration in such a case, is not to hold that drunkenness will excuse crime, but to enquire whether the very crime which the law defines and punishes, has been in point of fact committed.”
In these remarks, the court intended to be understood, as distinctly indicating, that a degree of drunkenness, by which the party was greatly excited, and which produced a state of mind unfavorable to deliberation and premeditation, although not so excessive, as to render the party absolutely incapable of forming a deliberate purpose, might be taken into consider *156 ation by a jury, in determining whether the killing were done with premeditation and deliberation.
The whole subject was ably reviewed by Judge Turley, in the case of Pirtle vs. the State, 9 Hum. Rep. 663.
In delivering the opinion of the Court, in that case, the Judge says, at p. 671: “It will frequently happen necessarily, when the killing is of such a character as the common law designates as murder, and it has not been perpetrated by means of poison or by lying in wait, that it will be a vexed question, whether the killing has been the result of sudden passion produced by a cause inadequate to mitigate it to manslaughter, but still sufficient to mitigate it to murder in the second degree, if it be really the true cause of the excitement, or whether it has been the result of premeditation and deliberation ; and in all such cases, whatever fact is calculated to cast light upon the mental status of the offender, is legitimate proof; and among others, the fact that he was at the time drunk: not that this will excuse or mitigate the offence if it were done wilfully, deliberately, maliciously, and pre-meditatedly; (which it might well be, though the perpetrator was drunk at the time,) but to show that the killing did not spring from a premeditated purpose, but sudden passion, excited by inadequate provocation, such as might reasonably be expected to arouse sudden passion and heat to the point of taking life, without premeditation and deliberation.”
Here, the Court explicitly lays down the rule to be, that in all cases where the question is between murder in the first, and murder in the second degree, the fact of drunkenness may be proved, to shed light upon the mental status of the offender, and thereby to enable the jury to determine whether the killing sprung from a premeditated purpose, or from passion excited by inadequate provocation. And the degree of drunkenness which may then shed light on the mental state of the offender, is not alone that excessive state of intoxica *157 tion which deprives a party of the capacity to frame in his mind a design deliberately and premeditatedly to do an act; for the Court says, that in the state of drunkenness refered to, a party well may be guilty of killing wilfully, deliberately, maliciously, and premeditatedly; and if he so kill, he is guilty as though he were sober.
The principle laid down by the Court is, that when the question is, can drunkenness be taken into consideration in determining whether a party be guilty of murder in the second degree, the answer must be, that it cannot; but when the question is, what was the actual mental state of the perpetrator at the time the act was done, was it one of deliberation and premeditation, then it is competent to show any degree of intoxication that may exist, in order that the jury may judge, in view of such intoxication, in connexion with all the other facts and circumstances, whether the act was premedi-tatedly, and deliberately done.
The law often implies malice from the manner in which the killing was done, or the weapon with which the blow was stricken. In such case, it is murder, though the perpetrator was drunk. And no degree of drunkenness will excuse in such case, unless by means of drunkenness an habitual or fixed madness be caused. The law in such cases, does not seek to ascertain the actual state of the perpetrator’s mind, for the fact from which malice is implied having been proved, the law presumes its existence, and proof in opposition to this presumption, is irrelevant and inadmissible. Hence, a party cannot show that he was so drunk as not to be capable of entertaining a malicious feeling. The conclusion of law is against him.
■ But when the question is, whether a party is guilty of murder in the first degree, it becomes indispensable that the jury should form an opinion as to the actual state of mind with which this act was done. All murder in the first de *158 gree, (except that committed by poison, and by lying in wait,) must be perpetrated wilfully, deliberately, maliciously, and premeditatedly. The jury must ascertain, as a matter of fact, that the accused was in this state of mind, when the act was done. Now, according to the cases of Swan vs. the State, and Pirtle vs. the State, any fact that will shed light upon this subject may be looked to by them, and may constitute legitimate proof for their consideration. And among other facts, any state of drunkenness being proved, is a legitimate subject of inquiry, as to what influence such intoxication might have had upon the mind of the offender in the perpetration of the deed.
We know that an intoxicated man, will often, upon a slight provocation, have his passions excited' and rashly perpetrate a criminal act. Now, it is unphilosophical for us to assume, that such a man would, in the given case, be chargeable with the same degree of deliberation and premeditation, that we would ascribe to a sober man, perpetrating the same act, upon a like provocation.
It is in this view of the question, that this Court held, in Swan’s case, and in Pirtle’s case, that the drunkenness of a party might be looked to by the jury, with the other facts in the case, to enable them to decide whether the killing were done deliberately and premeditatedly.
But his Honor, the Circuit Judge told the jury, that drunkenness was an aggravation of the offence, unless the defendant was so deeply intoxicated, as to be incapable of forming in his mind a design deliberately and premeditatedly to do the act. In this charge there is error, for which the judgment must be reversed.
Reverse the judgment, and remand the cause for another trial.